## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
## PINE BLUFF DIVISION

YAHSHUA BEN-YAH
aka CHARLES JOHNSON
ADC #114545                                                          PETITIONER


VS.                                   5:07CV00159 JTR


LARRY NORRIS, Director,
Arkansas Department of Correction                                   RESPONDENT

### <u>MEMORANDUM AND ORDER</u>

### I.  Introduction

Pending before the Court is Respondent's Motion to Dismiss this 28 U.S.C. § 2254 habeas action on statute of limitations grounds. (Docket entry #12.) Petitioner has filed two Responses (docket entries #17 and #27), to which Respondent has filed a Reply.  (Docket entry #29.)  Before addressing the merits of Respondent's Motion, the Court will briefly review the relevant procedural history of this case.

Petitioner was convicted of second-degree forgery in Pulaski County Circuit Court in May of 2004.  (Docket entry #12, Ex. A.)  Thereafter, he pursued a direct appeal to the Arkansas Court of Appeals, where he argued: (1) insufficiency of the evidence to support his conviction; and (2) a material variance between the charging information and the proof presented at trial.  *Johnson v. State*, 2005 WL 846124 (Ark. App. 2005) (unpublished decision).  On April 13, 2005, the Court rejected these arguments on the merits and affirmed.[1]  *Id.*  Petitioner did not appeal to the Arkansas Supreme Court or seek certiorari from the United States Supreme Court.

---

[1]The mandate in Petitioner's direct appeal issued on May 3, 2005. (Docket entry #12, Ex. D.)

On June 3, 2005, Petitioner filed a timely Rule 37 Petition in Pulaski County Circuit Court. In this pleading, he alleged the following errors: (1) ineffective assistance of counsel; (2) denial of due process based on insufficiency of the evidence; and (3) a Fifth Amendment violation. (Docket entry #12, Ex. E.) On December 27, 2005, the trial court entered an Order denying Rule 37 relief. (Docket entry #12, Ex. F.) Petitioner appealed to the Arkansas Supreme Court, which dismissed the appeal on June 22, 2006. *Johnson v. State*, 2006 WL 1704009 (Ark. 2006) (unpublished decision).

On December 28, 2006, Petitioner filed a state habeas Petition in Pulaski County Circuit Court.[2] On March 6, 2007, the court dismissed the Petition because it was not filed in Lee County, where Petitioner was incarcerated. (Docket entry #12, Exs. H and I.)

On March 30, 2007, Petitioner filed a second state habeas Petition in Pulaski County Circuit Court. On April 6, 2007, the court again dismissed the Petition for lack of jurisdiction. (Docket entry #12, Exs. J and K.)

On May 2, 2007, Petitioner filed a third state habeas Petition but this time he filed it in Lee County Circuit Court, the county of his incarceration. (Docket entry #12, Ex. L.) On June 14, 2007, the Court entered an Order denying the Petition on the ground that the claims were not cognizable in a state habeas proceeding. (Docket entry #12, Ex. M.)

In his federal habeas petition, which was filed on June 25, 2007, Petitioner challenges the sufficiency of the evidence supporting his conviction, which he characterizes as a violation of the Due Process Clause of the United States Constitution. (Docket entry #1.) Respondent's Motion to Dismiss argues that Petitioner's habeas claim is barred by the statute of limitations.

---

[2]In Petitioner's state habeas petitions he essentially restated his prior claim that the evidence was insufficient to convict him and that the trial court lacked jurisdiction over him due to his involvement with a religious organization.

For the reasons explained below, the Court concludes that this habeas action was timely filed. Thus, Respondent's Motion to Dismiss will be denied.

## II. Discussion

### A.    Trigger for the Limitations Period

The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides that a habeas petition must be filed within one year of the date on which the state "judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Where certiorari from the United States Supreme Court is not sought, the running of the statute of limitations, for purposes of § 2244(d)(1)(A), "is triggered . . . by the conclusion of all direct criminal appeals in the state system followed by the expiration of the time allotted for filing a petition for the writ [of certiorari]."[3]  *Smith v. Bowersox*, 159 F.3d 345, 348 (8th Cir.1998), *cert. denied*, 525 U.S. 1187 (1999).

The first issue the Court must resolve is when the limitations period began to run, *i.e.*, the date Petitioner's judgment was "final" for purposes of § 2244(d)(1)(A).  On April 13, 2005, the Arkansas Court of Appeals denied Petitioner's direct appeal and issued its mandate on May 3, 2005. Respondent argues that, upon issuance of the appellate mandate, the "judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," and the limitations period began to run.  (Docket entry #12 at 3-4.)

According to Respondent, Petitioner is *not* entitled to the 90 days allowed for filing a petition for writ of certiorari with the United States Supreme Court because the Arkansas Court of Appeals

_____

[3]After the conclusion of all direct criminal appeals in the state system, a petitioner is allowed 90 days to file a petition for writ of certiorari with the United States Supreme Court.  *See* Sup. Ct. R. 13.1.

is not a "state court of last resort."  *See* Rule 13.1 of the Rules of the United States Supreme Court.[4]

Respondent argues that Petitioner would only have been able to claim the benefit of this 90-day time

period if he had petitioned the Arkansas Supreme Court for review of the adverse Arkansas Court

of Appeals decision.

### 1.    *Collier v. Norris*

Respondent's argument was rejected by the court in *Collier v. Norris*, 402 F. Supp.2d 1026

(E.D. Ark. 2005), a procedurally similar case in which a § 2254 habeas petitioner had his conviction

affirmed on direct appeal by the Arkansas Court of Appeals, but did *not* petition for review to the

Arkansas Supreme Court.  In considering the applicability of the 90-day certiorari period, the court

directly addressed whether "the Arkansas Court of Appeals was the highest court of Arkansas in

which a decision could be had" for purposes of the jurisdictional statute of the United States

Supreme Court.  *Collier*, 402 F. Supp.2d at 1029 (citing 28 U.S.C. § 1257(a)).  Because the

petitioner was not sentenced to life imprisonment or death, the court noted that he was *required* to

file his appeal in the Arkansas Court of Appeals.  Furthermore, because the petitioner's direct appeal

to the Arkansas Court of Appeals raised only an evidentiary error, the court found that the

intermediate appeals court's decision was *not* subject to  review by the Arkansas Supreme Court:

> Collier's appeal of his conviction to the Arkansas Court of Appeals raised only one
> issue, i.e., whether the circuit court erred by refusing to exclude certain evidence
> under Rules 401 and 403 of the Arkansas Rules of Evidence. Collier raised no issue
> that could have invoked jurisdiction of the Supreme Court of Arkansas under Rule

---

[4]Rule 13.1 provides the following:  "A petition for a writ of certiorari seeking review of a judgment of a lower state court that is subject to discretionary review by the state court of last resort is timely when it is filed with the Clerk within 90 days after entry of the order denying discretionary review."  *See also* 28 U.S.C. 1257(a) ("Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari[.]")

1-2. Nothing in the decision of the Court of Appeals could have formed the basis for a petition for review under Rule 2-4(c). Collier's lawyer could not honestly have signed a petition for review alleging any of the grounds that must be alleged under Rule 2-4(c).

*Collier*, 402 F. Supp.2d at 1029.

Thus, the court in *Collier* concluded that the Arkansas Court of Appeals "was the highest court of Arkansas in which a decision could be had on Collier's appeal of his conviction." *Id.* (*citing Brown v. Texas*, 443 U.S. 47, 50 (1979) (where the United States Supreme Court noted its jurisdiction under 28 U.S.C. § 1257 in a case challenging a decision of a Texas county court because "[u]nder Texas law an appeal from an inferior court to a county court is subject to further review only if a fine exceeding $100 is imposed . . .," which meant the inferior court's denial of appellant's constitutional claims was a decision "by the highest court of a State in which a decision could be had")).[5] Because the court in *Collier* found that the petitioner was entitled to the benefit of the 90-day certiorari period, before triggering the 1-year statute of limitations, his petition was held to be timely.[6]

---

[5]In *Nichols v. Bowersox*, 172 F.3d 1068 (8th Cir. 1999) (*en banc*), the Court considered whether a petitioner had timely filed a habeas claim following his direct appeal in the Missouri Court of Appeals. Without discussing whether the Missouri Court of Appeals was a "court of last resort," for purposes of Sup. Ct. R. 13.1 or 28 U.S.C. §1257(a), the Court held that the state conviction was final "exactly 90 days after his conviction was affirmed on direct appeal." *Nichols*, 172 F.3d at 1072. This holding seemed to provide support for the proposition that the 90-day time period for filing for certiorari was included in all limitations calculations under § 2244(d)(1)(A).

[6]After entering the Order rejecting the respondent's statute of limitations defense, *Collier v. Norris*, 402 F. Supp.2d 1026 (2005), the court denied petitioner's habeas claims on the grounds they either failed on the merits or were procedurally defaulted. *Collier v. Norris*, E.D. Ark. No. 4:05CV00515 at docket entry # 21. Petitioner appealed the denial of habeas relief, and respondent cross-appealed on the statute of limitations defense. In *Collier v. Norris*, 485 F.3d 415 (8th Cir. 2007), the Court concluded that the "habeas petition was properly denied." Thus, it did "not reach [respondent's] argument, on cross-appeal, that the petition was untimely [because the Arkansas Court of Appeals is not a court of last resort]." *Id.* at 427-27.

-5-

2.      *Riddle v. Kemna*

In *Riddle v. Kemna*, 523 F.3d 850 (8th Cir. 2008) (*en banc*), the Court addressed whether the Missouri Court of Appeals was a "court of last resort" for purposes of triggering the limitations period under § 2244(d)(1)(A). The petitioner in *Riddle* had his conviction affirmed on direct appeal by the Missouri Court of Appeals, but did not file a "motion for transfer" to the Missouri Supreme Court, or a petition for writ of certiorari to the United States Supreme Court. The district court concluded that the petitioner's direct appeal became final on February 15, 2001, the date the Missouri Court of Appeals issued its mandate. Thus, the petitioner was not given credit for the 90-day time period for filing for certiorari with the United States Supreme Court; thereby making his habeas petition untimely.

On appeal, the Eighth Circuit, sitting *en banc,* held that the determination of "which Missouri court is the state court of last resort," required an "examination of the particular state court procedures." *Id.* at 853. The Court first looked to the Missouri Constitution, which explicitly declared the state supreme court to be the highest court in the state and gave it general superintending control over all courts in the state, including the power to make rules governing practice and procedure for all state courts. *Id.* The Court also noted that the Missouri Supreme Court had the power to set rules for transferring cases from the Missouri Court of Appeals:

> The [Missouri] supreme court, by rule, requires that an application to transfer first be filed in the court of appeals, before it may later be filed in the supreme court (the Missouri Constitution does not have this requirement). *Compare id. with* Mo. Sup.Ct. R. 83.04. The supreme court has added grounds for transfer-which only it can exercise-that are not listed in the Constitution (conflict between appellate decisions, and "equalizing the workload of the appellate courts"), in addition to its exclusive constitutional power to transfer court-of-appeals cases pre-opinion. *Mo. Const. art.* V, § 10; *Mo. Sup.Ct. R.* 83.04, 83.01. The Missouri Constitution concludes in describing transfer: "The supreme court may finally determine all causes coming to

> it from the court of appeals, whether by certification, transfer or certiorari, the same
> as on original appeal." *Mo. Const. art.* V, § 10; Mo. Sup.Ct. R. 83.09.

*Riddle*, 523 F.3d at 853.  In rejecting the petitioner's argument that, because the Missouri Court of

Appeals could *sua sponte* transfer a case to the Missouri Supreme Court it was a "court of last

resort," the Eighth Circuit noted that the Missouri Supreme Court could *sua sponte* "retransfer" a

case back to the Missouri Court of Appeals.

The Court also found petitioner's reliance on Missouri Supreme Court Rule 83.04 to be

misplaced.[7]  The Court noted that Rule 83.04 was promulgated in response to the holding in

*O'Sullivan v. Boerckel*, 526 U.S. 838 (1999), which permitted the states to define "one complete

round of the State's established appellate review process" for purposes of satisfying the state-court

exhaustion required contained in 28 U.S.C. § 2254(b)(1).  While Rule 83.04 controlled whether a

habeas petitioner had exhausted his remedies in state court, it had no application to the United States

Supreme Court's decision on granting or denying certiorari: "Rule 83.04 does not control - nor could

it - review by the United States Supreme Court under its Rule 13.1 and 28 U.S.C. § 1257(a)."[8]

*Riddle*, 523 F.3d at 854.  The Court concluded that  the Missouri Court of Appeals was *not* a "court

of last resort":

> The Missouri Supreme Court is the court of last resort. Riddle did not seek transfer
> by the Missouri Supreme Court. Without a denial of discretionary review by the
> Missouri Supreme Court, a Missouri lower-court decision cannot be directly

---

[7]Rule 83.04 provides that, "for purposes of federal habeas corpus review," transfer by the Missouri Supreme Court was "extraordinary" and not part of the standard review process.

[8]Arkansas has an essentially identical exhaustion provision to the one the Court addressed in *Riddle*.  Rule 1-2(h) of the Rules of the Arkansas Supreme Court provides in pertinent part that in criminal and post-conviction appeals, it is not necessary to petition for rehearing or to seek review following an adverse decision from the Arkansas Court of Appeals "in order to be deemed to have exhausted all available state remedies respecting a claim of error."

reviewed by the United States Supreme Court because "no decision of a state court
should be brought here for review either by appeal or certiorari until the possibilities
afforded by state procedure for its review by all state tribunals have been exhausted."
*Gorman v. Washington Univ.*, 316 U.S. 98, 100-01, 62 S.Ct. 962, 86 L.Ed. 1300
(1942) (dismissing writ of certiorari where discretionary review was not sought from
Missouri Supreme Court en banc, "the last state tribunal . .. to which the cause could
be brought for review which is the 'highest court of a State in which a decision could
be had' within the meaning of the jurisdictional statute"). *See also Osment v.
Pitcairn*, 317 U.S. 587, 63 S.Ct. 21, 87 L.Ed. 481 (1942) (per curiam) (dismissing
writ of certiorari where petitioner did not apply to transfer the case to the Missouri
Supreme Court en banc, because petitioner has not "exhausted the appellate review
provided by state law"). Therefore, the United States Supreme Court would not have
had jurisdiction to consider a petition for certiorari from Riddle after the court of
appeals affirmed his conviction. *See Banks v. California*, 395 U.S. 708, 89 S.Ct.
1901, 23 L.Ed.2d 653 (1969).

*Riddle*, 523 F.3d at 855. Thus, "because the United States Supreme Court could not have reviewed

[petitioner's] direct appeal [from the Missouri Court of Appeals], 'the expiration of time for seeking

[direct] review' does not include the 90-day period for filing for certiorari." *Riddle*, 523 F.3d at 855

(internal citations omitted).

    This Court must now decide if the Arkansas Court of Appeals is a "court of last resort,"

based on "an examination of the particular [Arkansas] state court procedures." *Riddle*, 523 F.3d at

853.  The Arkansas Supreme Court was created by the original Arkansas Constitution and was vested

with: "(1) Statewide appellate jurisdiction; (2) Original jurisdiction to issue writs of quo warranto

to all persons holding judicial office, and to officers of political corporations when the question

involved is the legal existence of such corporations; (3) Original jurisdiction to answer questions of

state law certified by a court of the United States, which may be exercised pursuant to Supreme

Court rule; (4) Original jurisdiction to determine sufficiency of state initiative and referendum

petitions and proposed constitutional amendments; and (5) Only such other original jurisdiction as

provided by this Constitution."  ARK. CONST. ART. 7, § 4 (repealed); ARK. CONST. AMEND. 80, §

2(D).  The Arkansas Supreme Court was charged with prescribing the rules of practice and procedure for all courts, and was given "general superintending control over all courts of the state[.]" ARK. CONST. AMEND. 80, §§ 3-4.  In 1979, the Arkansas Constitution was amended to allow for the creation of the Arkansas Court of Appeals, which has "such appellate jurisdiction as the [Arkansas] Supreme Court shall by rule determine and be subject to the general superintending control of the [Arkansas] Supreme Court."  ARK. CONST. AMEND. 58 (repealed); *see also* ARK. CONST. AMEND. 80, § 4.

Pursuant to its constitutional mandate, the Arkansas Supreme Court has promulgated rules requiring all appeals to be filed in the Arkansas Court of Appeals, except for certain categories of cases, including criminal cases involving the death penalty or life imprisonment.[9]  Ark. R. Sup. Ct. 1-2(a).  Furthermore, "[a]ny case is subject to reassignment by the [Arkansas] Supreme Court[.]"[10]  Ark. R. Sup. Ct. 1-2(b).

---

[9]The following cases "shall be filed in the [Arkansas] Supreme Court: (1) All appeals involving the interpretation or construction of the Constitution of Arkansas; (2) Criminal appeals in which the death penalty or life imprisonment has been imposed; (3) Petitions for quo warranto, prohibition, injunction, or mandamus directed to the state, county, or municipal officials or to circuit courts; (4) Appeals pertaining to elections and election procedures; (5) Appeals involving the discipline of attorneys-at-law and or arising under the power of the Supreme Court to regulate the practice of law; (6) Appeals involving the discipline and disability of judges; (7) Second or subsequent appeals following an appeal which has been decided in the Supreme Court; and (8) Appeals required by law to be heard by the Supreme Court."  Ark. R. Sup Ct. 1-2(a)(1)-(8).

[10]In considering whether to reassign a case, the Arkansas Supreme Court considers, *but is not limited to*, the following factors: (1) issues of first impression; (2) issues upon which there is a perceived inconsistency in the decisions of the Court of Appeals or Supreme Court; (3) issues involving federal constitutional interpretation; (4) issues of substantial public interest; (5) significant issues needing clarification or development of the law, or overruling of precedent; and (6) appeals involving substantial questions of law concerning the validity, construction, or interpretation of an act of the General Assembly, ordinance of a municipality or county, or a rule or regulation of any court, administrative agency, or regulatory body.  Ark. R. Sup. Ct. 1-2(b)(1)-(6).

The Arkansas Supreme Court may accept or remand any case certified to it from the Arkansas Court of Appeals and, *sua sponte*, may transfer and assume jurisdiction over any case appealed to the Arkansas Court of Appeals.  Ark. R. Sup. Ct. 1-2(d).  If the Arkansas Court of Appeals seeks to transfer a case to the Arkansas Supreme Court, it must certify certain findings.[11] Ark. R. Sup. Ct. 1-2(d).  Once a case is decided by the Arkansas Court of Appeals, it may be heard by the Arkansas Supreme Court pursuant to a petition for review:

> No appeal as of right shall lie from the Court of Appeals to the Supreme Court. The Supreme Court will exercise its discretion to review an appeal decided by the Court of Appeals only on application by a party to the appeal, upon certification of the Court of Appeals, or if the Supreme Court decides the case is one that should have originally been assigned to the Supreme Court. In determining whether to grant a petition to review, the following, while neither controlling nor fully measuring the Supreme Court's discretion, indicate the character of reasons that will be considered: (i) the case was decided in the Court of Appeals by a tie vote, (ii) the Court of Appeals rendered a decision which is arguably in conflict with a prior holding of a published opinion of either the Supreme Court or the Court of Appeals, or (iii) the Court of Appeals arguably erred in some way related to one of the grounds listed in Rule 1-2(b).

Ark. R. Sup. Ct. 1-2(e).  Finally, "[n]otwithstanding the foregoing provisions," the Arkansas Supreme Court may reassign and transfer cases between the two courts in order "to achieve a fair allocation of the appellate workload."  Ark. R. Sup. Ct. 1-2(g).

In *Collier,* the court found that the issues involved in the petitioner's direct appeal to the Arkansas Court of Appeals would not have allowed him to invoke the jurisdiction of the Arkansas Supreme Court, and that he could not have articulated a basis for the Arkansas Supreme Court to review the adverse decision of the Arkansas Court of Appeals, pursuant to Ark. R. Sup. Ct. 2-4 and

---

[11]The Arkansas Court of Appeals is required to "find and certify that the case: (1) is excepted from its jurisdiction by Rule 1-2(a), or (2) otherwise involves an issue of significant public interest or a legal principle of major importance."  Ark. R. Sup. Ct. 1-2(d).

1-2.  In this case, just as in *Collier*, it is very unlikely that the Arkansas Supreme Court would have granted a petition to review the adverse decision of the Arkansas Court of Appeals; there was no tie vote of an *en banc* panel of the Arkansas Court of Appeals; it was not readily apparent that the decision was in conflict with a decision of the Arkansas Supreme Court; and it was not readily apparent that the Arkansas Court of Appeals erred with respect to any of the grounds set forth in Ark. R. Sup. Ct. 1-2(b).[12]  *However, Ark. R. Sup. Ct. 1-2(b) makes it clear that the Arkansas Supreme Court's discretion for review is not limited to the express factors.  See* Ark. R. Sup. Ct. 1-2(b); *see also Maxey v. Tyson Foods, Inc.*, 341 Ark. 306, 307-08, 18 S.W.3d 328, 330 (2000) ("This court has the discretion to review an appeal decided by the Court of Appeals on application by a party. Ark. R. Sup. Ct. 1-2(e). Moreover, the factors we consider in determining whether to grant a petition to review *neither control nor fully measure our discretion*.") (emphasis added).[13]

Based on its review of Arkansas state court procedures, as required by *Riddle*, the Court concludes that the Arkansas Court of Appeals is not a court of last resort, for purposes of Sup. Ct.

---

[12]One of the express grounds for review by the Arkansas Supreme Court, under Rule 1-2(b)(3), are "issues of federal constitutional interpretation."  By definition, a person in state custody must show that his  custody "violates the Constitution or laws or treaties of the United States" in order to obtain habeas relief.  *See Smith v. Bowersox*, 311 F.3d 915, 920 (8th Cir. 2002) (citing 28 U.S.C. § 2254).  Thus, it is arguable that any cognizable habeas claim is subject to review by the Arkansas Supreme Court.

[13]The Arkansas Supreme Court, in characterizing its division of appellate jurisdiction, has stated that the Arkansas Court of Appeals is a "court of last resort" because in most categories of cases there "is no right no right of appeal from that court [the court of appeals] to this one [the supreme court]."  *Arkansas Power & Light Co. v. Hooks*, 295 Ark. 296, 300, 749 S.W.2d 291, 293 (1988).  While a party in most cases has no *right* to obtain review of an appeal decided by the Arkansas Court of Appeals, the Arkansas Supreme Court retains the *discretion* to review *any appeal* decided by the Arkansas Court of Appeals.

R. 13.1 and 28 U.S.C. § 1257(a).[14]  Because Petitioner did not seek to have the adverse ruling of the

Arkansas Court of Appeals reviewed by the Arkansas Supreme Court, it follows that the intermediate

court of appeals' decision could not have been  reviewed by the United States Supreme Court

because "no decision of a state court should be brought here for review either by appeal or certiorari

until the possibilities afforded by state procedure for its review by all state tribunals have been

exhausted." *See Riddle*, 523 F.3d at 855 (*quoting Gorman v. Washington Univ.*, 316 U.S. 98, 100-01

(1942)).  Thus, the Court concludes that "the expiration of time for seeking [direct] review does not

include the 90-day period for filing for certiorari."  *See Riddle*, 523 F.3d at 855.

### 3.      Commencement of the Limitations Period

The final question the Court must decide is when the AEDPA limitations period began.   In

*Riddle,* the Court noted that, for purposes of § 2244(d)(1)(A), the trigger should have been *the later*

*of* the "expiration of the time for seeking [direct] review," which would have been 15 days after the

Missouri Court of Appeals decision which could have supported a petition for transfer, *or* the

issuance of the Missouri Court of Appeals' mandate.

The Arkansas procedural rules governing direct appellate review are very similar to those in

Missouri.  A party has 18 days to petition the Arkansas Supreme Court to review an appeal decided

by the Arkansas Court of Appeals, *see* Ark. R. Sup. Ct. 2-4, and, in cases where review is not

requested, the mandate cannot issue until "the time for filing a petition for review has expired[.]"

*See* Ark. R. Sup. Ct. 5-3(a).  In this case, the "later date" for the "conclusion of direct review"

---

[14]As previously noted, the Arkansas appellate court procedures are almost identical to the Missouri appellate court procedures.  Furthermore, Ark. R. Sup. Ct. 1-2(b) makes it clear that the Arkansas Supreme Court *has the discretion* to review *any case* decided by the Arkansas Court of Appeals.

occurred when the Arkansas Court of Appeals issued its mandate, on May 3, 2005. *See Riddle*, 523 F.3d at 856.

Thus, Petitioner had one year from May 3, 2005, to file his federal habeas Petition. Petitioner claims he placed the Petition in the prison mailbox system on June 22, 2007.[15] Thus, the habeas Petition initiating this action was filed 415 days after the 1-year limitations period expired.

## B.    Statutory Tolling

The AEDPA goes on to provide that the one-year limitations period is tolled while a "properly filed" application for post-conviction relief is pending in state court.    28 U.S.C. § 2244(d)(2).  The statutory tolling period begins when an application for post-conviction relief is filed in the trial court and runs, in one continuous block of time, "until the application has achieved final resolution through the State's post-conviction procedures" on appeal. *See Carey v. Saffold*, 536 U.S. 214, 219-221 (2002).  Thus, the Court must now determine: (1) the applicable periods of statutory tolling; and (2) after excluding those tolling periods, whether the habeas Petition was timely filed.

---

[15]Petitioner signed his Petition on June 22, 2007, and claims he placed it into the prison mailbox system on that date.  The Court assumes that Petitioner placed his Petition in the internal mail system in compliance with the prison mailbox rule on this date. *See Nichols v. Bowersox*, 172 F.3d 1068, 1077 (8th Cir. 1999) ("we hold that, for purposes of applying 28 U.S.C. § 2244(d), a *pro se* prisoner's petition for a writ of habeas corpus is filed on the date it is delivered to prison authorities for mailing to the clerk of the court").  Under this rule, "a *pro se* inmate's § 2254 petition is timely filed if it is deposited in the institution's internal mail system on or before the last day for filing[.]" *Nichols*, 172 F.3d at 1077 n.5.  As explained later, the 3-day difference between the time Petitioner claims he placed the Petition in the mail and the actual filing date is not dispositive.

1.      **Tolling Period for the Rule 37 Petition**

Respondent acknowledges that, prior to the expiration of the limitations period, Petitioner

filed a timely Petition for Rule 37 relief, and concedes that this tolled the limitations period, in a

continuous block, until the dismissal of Petitioner's Rule 37 appeal.   This amounts to 384 days of

statutory tolling.   When this statutory tolling is taken into account, the limitations period breaks

down as follows:

(1)     May 3, 2005:  1-year statute of limitations begins based on the issuance of the
        mandate from the Arkansas Court of Appeals.  Petitioner had until May 3,
        2006, to file his federal habeas Petition.

        ⟶     *31 days run against the statute of limitations*

(2)     June 3, 2005:  Petitioner files his Rule 37 petition, beginning statutory tolling.
        Only 31 days has run against the statute of limitations when tolling begins.

        ⟶     *384 days of statutory tolling*

(3)     June 22, 2006:   Petitioner's Rule 37 Appeal is dismissed, concluding
        statutory tolling.  Because 31 days has run against the statute of limitations,
        there are 334 days remaining on the limitations period.   Thus, after the
        conclusion of the Rule 37 statutory tolling, Petitioner had until May 22, 2007
        (June 22, 2006, + 334 days), to file his federal habeas Petition.

2.      **Tolling Period for the State Habeas Petitions**

Respondent argues that none of the time periods when Petitioner's state habeas petitions were

pending should count as statutory tolling because "state habeas falls outside the scope of ordinary

course of [sic] appellate review."  (Docket entry #12 at 4.)  According to Respondent, a state habeas

petition can never trigger statutory tolling, citing *Carey v. Saffold*, 536 U.S. 214, 219-20, 223-25

(2002).  In *Carey*, the Court noted that a request for an original "extraordinary writ" from a state

appellate court would not normally toll the statute of limitations.  However, the Court was careful

to distinguish this from a normal "appellate" collateral review process involving a decision from a lower state court, followed by an appeal to a higher state court, which would qualify for tolling. The state habeas petitions in this case did not request any original "extraordinary" writs from the Arkansas Supreme Court. Furthermore, this Court is not aware of any authority holding that the Arkansas state habeas procedure should be excluded from the normal collateral review process for purposes of statutory tolling.

While the scope of habeas corpus relief under Arkansas law is limited, a petitioner is still allowed to file a petition for a writ of habeas corpus in circuit court.[16]  *See* Ark. Code Ann. § 16-112-102(a)(1). Arkansas appellate procedure also provides for an appeal from the circuit court's denial of state habeas relief.[17]  Based on the availability of a state habeas corpus remedy, courts in the Eastern District of Arkansas have routinely included the pendency of state habeas petitions in their tolling calculations. *Cf. Puckett v. Norris*, 2007 WL 2382009, *4 (E.D. Ark. 2007) (including pendency of state habeas petition in statutory tolling calculation); *accord Gillum v. Norris*, 2007 WL 1442683, *4 (E.D. Ark. 2007). Thus, the Court rejects Respondent's argument that a state habeas petition "falls outside the scope of ordinary . . . appellate review" for purposes of excluding it from statutory tolling.

---

[16]A state habeas corpus proceeding is not a substitute for a petition for postconviction relief under Rule 37 of the Arkansas Rules of Criminal Procedure. *See Cothrine v. State*, 322 Ark. 112, 114, 907 S.W.2d 134, 135 (1995) (*per curiam*). Moreover, it is the petitioner's burden, in a state habeas corpus claim, to establish that the trial court lacked jurisdiction or that the commitment was invalid on its face, "otherwise, there is no basis for a finding that a writ of habeas corpus should issue." *See Young v. Norris*, 365 Ark. 219, 221, 226 S.W.3d 797, 798 (2006)

[17]The Arkansas Supreme Court has expressly stated that an appeal is the proper procedure to obtain review of a circuit court's denial of a writ of habeas corpus. *See Flowers v. Norris*, 347 Ark. 760, 762, 68 S.W.3d 289, 290 (2002).

While a state habeas petition may qualify for statutory tolling, it must be "properly filed." *See* 28 U.S.C. § 2244(d)(2). While incarcerated in Lee County, Petitioner improperly filed his first two state habeas petitions in Pulaski County Circuit Court.[18] This resulted in both of those petitions being dismissed on jurisdictional grounds. Thus, Petitioner's Pulaski County habeas petitions were not "properly filed" for purposes of 28 U.S.C. § 2244(d)(2) and statutory tolling. *See Lewis*, 454 F.3d at 781.

However, Petitioner later filed a petition for state habeas relief in Lee County, the county of his incarceration. This state habeas petition was filed on May 2, 2007, before the AEDPA limitations period had run. On June 14, 2007, the Lee County Circuit Court denied the petition because it failed to state a cognizable claim. The Court concludes that this petition was "properly filed" and should count toward statutory tolling. Taking this period of statutory tolling into consideration, the limitations period breaks down as follows:

(1)    May 3, 2005:  1-year statute of limitations begins based on the issuance of the mandate from the Arkansas Court of Appeals. Petitioner had until May 3, 2006, to file his federal habeas Petition.

⟶    *31 days run against 1-year the statute of limitations*

(2)    June 3, 2005:  Petitioner files his Rule 37 petition, beginning statutory tolling. By this time, 31 days has run against the statute of limitations.

⟶    *384 days of statutory tolling*

---

[18]In *Lewis v. Norris*, 454 F.3d 778 (8th Cir. 2006), a § 2254 habeas petitioner, who was incarcerated in Lincoln County, filed an Arkansas state habeas petition in Mississippi County. Because Arkansas law only gave circuit courts habeas corpus jurisdiction over prisoners within their respective counties, the Court held that the state habeas petition was not "properly filed" for purposes of statutory tolling under 28 U.S.C. § 2244(d)(2). *Lewis*, 454 F.3d at 781.

(3)     June 22, 2006:  Petitioner's Rule 37 Appeal is dismissed, concluding statutory tolling.  Because 31 days has run against the statute of limitations, there are 334 days remaining on the limitations period.  Thus, after the conclusion of the Rule 37 statutory tolling, Petitioner has until May 22, 2007 (June 22, 2006, + 334 days), to file his federal habeas Petition.

> ⟶     *314 days run against the 1-year statute of limitations*

(4)     May 2, 2007: Petitioner files his state habeas petition in Lee County Circuit Court, beginning statutory tolling.  By this time, a total of 345 days has run against the 1-year statute of limitations.

> ⟶     *43 days of statutory tolling*

(5)     June 14, 2007:  Petitioner's state habeas petition is denied, concluding statutory tolling.  Because a total of 345 days has previously run against the limitations period, there were 20 days remaining on the limitations period.[19]  Thus, after the conclusion of the state habeas statutory tolling, Petitioner had until July 5, 2007 (June 14, 2007, + 20 days), to file his federal habeas Petition.[20]

> ⟶     *8 days run against the 1-year statute of limitations*

(6)     June 22, 2007: Petitioner places his habeas Petition in the prison mailbox, which the Eighth Circuit has recognized to be tantamount to filing the petition with the Clerk of Court for the Eastern District of Arkansas.

Because Petitioner's habeas Petition was filed before the expiration of the one-year limitations period, the  Court concludes that Respondent's Motion to Dismiss is without merit.

---

[19]In calculating this statutory tolling period, the Court has made the assumption most favorable to Respondent that it ended on June 14, 2007, when the Lee County Circuit Court denied the state habeas petition.  Petitioner was likely entitled to 30 days of additional tolling for the time in which he could have filed a Notice of Appeal with the Arkansas Supreme Court.  *See Williams v. Bruton*, 299 F.3d 981, 983-84 (2002) (holding that Minnesota state postconviction petition remained "pending" for purposes of statutory tolling for the 60 days in which the petitioner could have filed a notice of appeal from the lower court's denial of postconviction relief).

[20]The last day of the limitations period was July 4, 2007.  However, because that date is a federal holiday, the statute of limitations would have run on July 5.  *See* Fed. R. Civ. P. 6(a).

-17-

### III.  Conclusion

IT IS THEREFORE ORDERED THAT:

1.       Respondent's Motion to Dismiss (docket entry #12) is DENIED; and

2.       Respondent must file a Response to the Petition (docket entry #1) within 20 days of

the entry of this Order.

Dated this 31st day of July, 2008.

_____
UNITED STATES MAGISTRATE JUDGE