**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

YASHUA BEN-YAH
aka CHARLES JOHNSON
ADC #114545                                                                                    PETITIONER


VS.                                            5:07CV00159 JTR


LARRY NORRIS, Director,
Arkansas Department of Correction                                              RESPONDENT

## MEMORANDUM AND ORDER

### I. Background

Pending before the Court[1] is a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  (Docket entry #1.)  Respondent has filed a Response (docket entry #32), to which Petitioner has filed a Reply.  (Docket entry #35.)  Thus, the issues are joined and ready for disposition.

Before addressing the merits, the Court will review the pertinent procedural history associated with Petitioner's habeas claims.   On May 19, 2004, Petitioner was convicted of second-degree forgery following a bench trial in Pulaski County Circuit Court. (Docket entry #12, Ex. A.) Petitioner was sentenced, as a habitual offender, to 120 months in the Arkansas Department of Correction.

Petitioner appealed his conviction to the Arkansas Court of Appeals, where he argued: (1) insufficiency of the evidence to support his conviction; and (2) a material variance between the charging information and the proof presented at trial constituted reversible error.  *Johnson v. State*, 2005 WL 846124 (Ark. App. 2005) (unpublished decision). On April 13, 2005, the Arkansas Court

---

[1]The parties have consented to proceedings before a United States Magistrate Judge. (Docket entry #13.)

of Appeals rejected these arguments on the merits and affirmed.[2]

In this federal habeas action, which was filed on June 25, 2007, Petitioner challenges the sufficiency of the evidence supporting his conviction, which he characterizes as a violation of the Due Process Clause of the United States Constitution.[3] (Docket entry #1.)  Respondent argues that Petitioner's claim has no merit.

Because the Court concludes that Petitioner's habeas claim is without merit, the Petition will be denied, and the case will be dismissed, with prejudice.

---

[2]The complete procedural history of Petitioner's postconviction proceedings in state court is set forth in the Court's July 31, 2008 Memorandum Order (docket entry #30) denying Respondent's Motion to Dismiss (docket entry #12) this case on statute of limitations grounds. *See Ben-Yah v. Norris*, 570 F. Supp.2d 1086 (E.D. Ark. 2008).

[3]Petitioner has filed a change of address indicating that he was paroled on November 13, 2008.  (Docket entry #37.)  On May 14, 2009, the Court directed Respondent to address: (1) Petitioner's current custodial status; (2) whether Petitioner is still serving any portion of his sentence; and (3) whether Petitioner's requested relief is moot.  (Docket entry #43.)

On May 26, 2009, Respondent filed a Response indicating that Petitioner is still serving (an unspecified) term of "supervised parole," and that his sentence is not yet discharged.  (Docket entry #46.)  Because Petitioner was incarcerated at the time he filed his Petition and is now on supervised parole based on the underlying conviction, Respondent contends that Petitioner's habeas action is *not* moot, and remains a justiciable case or controversy.  *Id.*  The Court agrees.  *See Spencer v. Kemna*, 523 U.S. 1, 7-8 (1998) (habeas challenge to the validity of a conviction is not moot despite petitioner's subsequent release from incarceration and placement on parole because "the restriction imposed by the terms of the parole constitutes a concrete injury, caused by the conviction and redressable by invalidation of the conviction."); *United States v, Carelock*, 459 F.3d 437, 438 n.1. (3rd Cir. 2006) (habeas petitioner's challenge to his conviction satisfied case-or-controversy requirement despite his subsequent post-filing release from incarceration because of restrictions of parole) (citing *Spencer*); *see also Carafas v. LaVallee*, 391 U.S. 234 (1968) (statutory habeas jurisdictional perquisite of "custody" is determined by custody at the time of filing).

2

## II.  Discussion[4]

Petitioner's sole argument is that the evidence the state presented during his trial was insufficient to support his conviction for second-degree forgery. A challenge to the sufficiency of the evidence is a claim cognizable in a federal habeas proceeding pursuant to the Due Process Clause of the Fourteenth Amendment. *See Jackson v. Virginia* , 443 U.S. 307, 321 (1979), overruled on other grounds by *Schlup v. Delo*, 513 U.S. 298 (1995). In reviewing the sufficiency of the evidence, under 28 U.S.C. § 2254, the Court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original).

At trial, Lajuana McCauley, testified that she was married to Petitioner.  (Trial Tr. 41.) McCauley was the treasurer for the Holy Anointing Deliverance Church, and Petitioner was the church's pastor.[5]  (Trial Tr. 50-51.)  McCauley was in charge of keeping the money and checkbook

---

[4]Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a habeas petitioner may not obtain relief with respect to any claim adjudicated on the merits in a state court proceeding unless he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. *See* 28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). An unreasonable application of clearly established federal law is one in which "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. A presumption of correctness attaches to factual determinations made by a state court, and a habeas petitioner must rebut this presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

[5]In later testimony, McCauley described the church as a "business" and a "partnership" with Petitioner.  (Trial Tr. 58-59.)

for the church.  (Trial Tr. 51.)  She was the only person authorized to sign checks for the church account.[6]  (Trial Tr. 51.)

McCauley testified that, on April 13, 2004, she and Petitioner got into a fight at their home. (Trial Tr. 42-44.)  This resulted in the police arresting Petitioner.[7]  (Trial Tr. 62-66.)

On April 14, 2004, Petitioner took the church checkbook without McCauley's permission. (Trial Tr. 50-51, 56.)  She identified the check that was the subject of the forgery charge as coming from the church checkbook.[8]  (Trial Tr. 57.)  She saw that there were two handwritten signatures on the face of the check.  (Trial Tr. 57.)  One was her name, "LaJuana McCauley"; however, she testified that she did not sign the check.  (Trial Tr. 57-58.)  She recognized the other signature as Petitioner's.  (Trial Tr. 58.)  She did not give Petitioner permission to take the check or sign the check.  (Trial Tr. 58.)

Amy Bottoms, a Regions Bank teller at the East Ninth Street branch, testified that, on April 14, 2003, she was working the drive-through.  (Trial Tr. 69-70.)  She recognized Petitioner as

---

[6]According to McCauley, the reason Petitioner was never authorized to sign the checks was because he did not want the authorization, and because of "his past that he had written out, signed people's checks," including prior convictions for "using drugs" and forgery.  (Trial Tr. 59-60.)

[7]Petitioner was charged, in a separate criminal case, with various crimes arising from  the domestic disturbance, including domestic battery, resisting arrest, and third-degree assault.  (Trial Tr. 40.)  The parties agreed to simultaneously try both the domestic related criminal charges and the forgery charge in a bench trial. (Trial Tr. 56.)   In this federal habeas action, Petitioner is only challenging his second-degree forgery conviction.

[8]This check was for Regions Bank account number 8009651128.  (Trial Tr. 125, Docket entry #12, Ex. B at 74.)  The name of the account printed on the upper-left of the check is "HOLY ANOINTING DELIVERANCE CHURCH FOUNDER PASTOR CHARLES JOHNSON."  *Id.*  The check is made payable to "Cash" in the amount of $400.00.  *Id.*  There are two signatures on the lower-right of the check, one purports to be Petitioner's, and the other purports to be Lajuana McCauley's.  *Id.*

4

he came through her line.  (Trial Tr. 70.)  Petitioner said that he had a deposit for $3,900.00, and

"asked for cash back of $400."  (Trial Tr. 70, 75.)  Because the deposit was to a business checking

account, Bottoms told Petitioner that he "needed to write a check" to get money back.  (Trial Tr. 71.)

Bottoms saw Petitioner write the check, sign the bottom signature line, and sign the back of

the check.[9]  (Trial Tr. 71.)  Bottoms cashed the check and gave Petitioner $400.00.  (Trial Tr. 71.)

Bottoms testified that minutes later, Petitioner came back and said that he needed to sign "Ms.

LaJuana's" name to the check, so she gave him the check back "and [Petitioner] signed her name."

(Trial Tr. 71.)

Jan Malone, the branch manager, testified that account 8009651128 was a business checking

account opened on July 6, 2000.  (Trial Tr. 78, 90.)  The name of the account was "Holy Anointing

Deliverance Church, Founder and Pastor Charles L. Johnson."  (Trial Tr. 79.)  The only signature

authorized to sign checks drawn on this account was "Lajuana S. McCauley."  (Trial Tr. 79.)

Petitioner testified and acknowldged that he was not a "signer" on the account, but that he

signed McCauley's name on the check.  (Trial Tr. 91.)  According to Petitioner, he needed the cash

to post a bond on a separate cirminal matter that was pending against him.  (Trial Tr. 86-87.)

Petitioner testified that after he signed McCauley's name he called her and told her what he had

done. (Trial Tr. 87.)  According  to Petitioner, the account was his, because he was the "founding

pastor" and "[t]he account holder name is Founding Pastor Charles Johnson."  (Trial Tr. 91.)

On direct appeal, the Arkansas Court of Appeals concluded that the preceding evidence was

sufficient to sustain Petitioner's conviction for second-degree forgery:

---

[9]Bottoms identified the check Petitioner wrote as the same one identified by McCauley.
(Trial Tr. 72-73.)

Here, when [Petitioner] signed his own name on a stolen check and received $400-before forging his wife's name on the instrument-he uttered a check that purported to be an authorized act of another (Ms. McCauley) without such authorization. The facts established that [Petitioner] took the checkbook without the permission of its owner and knew that he was not authorized to withdraw funds from the church's account. Indeed, he returned to the bank and attempted to cover-up his fraudulent withdrawal by forging the signature of the only person authorized to draw on the account, his wife. The evidence further established that the church funds withdrawn by [Petitioner] were used, not for authorized church expenditures, but to help him establish bond in a separate criminal matter.

We are satisfied that there is sufficient evidence to show that [Petitioner] knew he was not authorized to draw on the church's account and uttered a check with the purpose of withdrawing money on the account (defrauding) by representing that he had authority to make such a withdrawal (signing his name). Accordingly, we affirm on this point.

*Johnson*, 2005 WL 846124 at *2.

Under Arkansas law, "[a] person forges a written instrument if, with purpose to defraud, the person makes, completes, alters, counterfeits, possesses, or utters any written instrument that purports to be or is calculated to become or to represent if completed the act of a person who did not authorize that act." Ark. Code Ann. § 5-37-201(a). A person commits second-degree forgery if he "forges a written instrument that is . . . [a] check . . . or other written instrument that does or may evidence, create, transfer, terminate, or otherwise affect a legal right, interest, obligation, or status." Ark. Coder Ann. §5-37-201(c)(1).

Petitioner emphasizes that his name was included in the name of the business checking account, and that he owned the church.[10] According to Petitioner, he did not need his wife's permission to "conduct business" with the account, as he had "sovereign authority spiritual and

---

[10]Petitioner has submitted Articles of Incorporation, filed with the Arkansas Secretary of States on May 15, 2000, that purport to identify Petitioner as the incorporator of the Holy Anointing Deliverance Church, a "religious corporation." (Docket entry #1 at 13-14.)

natural" concerning the account.

Petitioner's argument ignores the evidence that: (1) he took and wrote the check without permission; (2) he conceded at trial that he was not a "signer" on the account; and (3) he was seen signing McCauley's name on the check.  Furthermore, Petitioner's wife testified that she never gave him permission to sign or take any checks.

Given the limited scope of this Court's review under *Jackson v. Virginia* , 443 U.S. 307, 321 (1979), which requires it to view the facts in favor of the prosecution, the Court concludes that a rational trier of fact could have found that Petitioner committed each of the essential elements of second-degree forgery beyond a reasonable doubt.  Accordingly, the Court concludes that the Arkansas Court of Appeals' decision that there was sufficient evidence to support Petitioner's conviction was neither "contrary to" or an "unreasonable application" of clearly established federal law, nor was it an "unreasonable determination of the facts." *See* 28 U.S.C. § 2254(d) and (e).

### III. Conclusion

IT IS THEREFORE ORDERED THAT the Petition for Habeas Corpus under 28 U.S.C. § 2254 (docket entry #1) be and it is hereby DENIED, and the case is DISMISSED, WITH PREJUDICE.

Dated this 19th day of June, 2009.

_____
UNITED STATES MAGISTRATE JUDGE